Brinkerhoff, C. J.
If the sale, by the master commissioner of the court, of “the fixed and movable machinery” insured, worked .a complete transfer and entire alienation of the property insured, *291 the plaintiff can not recover for any loss happening during the time such alienation and transfer remained operative; and this,
1. On what seems to be a settled principle of the general law of insurance. “ If ju’operty insured is sold, so *tkat the assured
retains no interest in it, and is subject to no risk or responsibility .on account of it, and no assignment, or agreement for the assignment of the policy is made, and afterward a loss happens, and after the loss the policy is assigned to the vendee, the assignment will be ineffectual in respect to such loss, and neither the party originally insured nor his assignee can recover the loss; the original assured .can recover nothing, for, having no interest in the property at the time ■of the loss, he has sustained no damage; nor can the assignee recover .anything, because, at the time of the loss, he was not a party to the insurance.” 1 Phil, on Insurance, 63, and cases there cited. And,
2. From the terms of the defendant’s act of incorporation and 'by-laws, indorsed upon the policy, and by which its stipulations must be considered as limited.
The 12th section of the defendant’s act of incorporation is this:
“ That when any building shall be alienated, the policy shall thereupon be void, and surrendered to the directors to be canceled; the note shall be given up upon the payment of all assessments upon the same prior to such surrender; the policy may be assigned to .the grantee or alienee, who may have the right thereto confirmed, for the use of said grantee or alienee, upon application to the directors within thirty-days, and their consent, on giving proper •security to the deposit note, and shall herebj^ become a member of «aid company.”
This section of the act of incorporation, it will be seen, relates, in terms, only to buildings insured; but section 4, article 4, of the by-laws of the defendant, also indorsed on the policy, is as follows:
“Whenever any member of this company, who has an insurance •on goods or other personal property only, shall bona fide alienate or sell out said goods or other personal property, he may have the same privilege of surrendering or assigning his policy; and in the same form and manner *as is provided for in the 12th section of the act of incorporation, in the case of the alienation or sale of buildings.”
Now, this provision of the by-laws, though not an express stipulation against alienation, proceeds throughout on the assumption that alienation would avoid the policy, and shows, at least, that *292 the parties contracted in view of, and by their contract recognized,, the rule of the law above given, to wit, that total alienation of the property insured would avoid the policy.
But one question then remains : Hid the sale by the master under the decree work a complete transfer of the “ fixed and movable machinery ” insured ? For, if the property was effectually sold and disposed of under a mortgage made by the assured, it is, in effect,, a sa,le by the assured.
In considering this question, it is important to notice, that there-was but one lien upon this persona] property insured, to w,it, that of Potwin and Curtis, who were, at the time of the sale, already in possession as lessees 'of the assured; while upon the real estate-sold there were other and conflicting liens. But to the proceeds of the sale of the personal property, aud to which alone the insurance-extended, Potwin and Curtis alone were entitled.
This personal property was properly ordered to be sold separately, and was sold separately, and for a separate price, to Potwin and Curtis, for a sum less than the amount due them under the decree, and the amount of this sale was applied, by the subsequent order of the court, to the satisfaction,pro tanto, of their decree. No change-of possession was.necessary or possible in order to complete the sale, foi the purchasers were already in possession ; no payment of the-purchase money to the master was necessary, for it was all coming to the purchasers. The property sold being personalty, no order of confirmation was required. Nothing further was required, if anything, but an order applying the proceeds of the sale to the satisfaction, *pro tanto, of the decree standing in-favor of the-purchasers; and this was made; and it seems.to us that the sale then stood, for the time being, a transaction perfected and complete. We can see no act or element which was wanting to its-completeness; we can imagine none which would have rendered it more complete.
While this state of things continued, it is clear, we think, that, the jmrchasers, as such, could have vindicated by any aj>prop>riate action, their perfect title to this property as against all the world. It would have been perfectly Competent for an utter stranger to-have bought this property separately from the real estate, at the master’s sale. Sujjpose one had done so, had paid the amount of his bid, and that amount had been, by order of the court, applied to the decree in favor of Potwin and Curtis. It seems to us clear *293 that his title to it would have been perfect; that he might have ■removed and transported it wheresoever he pleased, and have maintained his title to it against all parties. And wherein is there •any essential distinction between his supposed condition and rights and those of Potwin and Curtis, after their purchase and the application, by order of the court, of the amount of their bid to the payment of their decree ? We can see none.
A question of construction is made, as to whether the subsequent •order of the court setting aside the sale, really embraced the sale of this personal property, or whether it extended only to the sale •of the real estate. But, granting that such order did extend to the personalty as well as realty, and that it was competent for the -court to make such order, still, this was the condition of things for several months before the sale was set aside; and in this state •of things the property was destroyed by fire.
Now, suppose this property had never been destroyed by fire, but that large losses, by the burning of other property insured by the defendant, had occurred during the interval between the making and the setting aside of this sale. Could the plaintiff have been assessed on its *premium note to make good such losses ? It seems to us very clear that it could not, and that on a suit being brought for the collection of such supposed assessment, an answer .alleging an alienatioñ prior to the occurrence of such losses, and proof of the facts apparent in the record of the case in which the .■sale to Potwin and Curtis was made, would have been a conclusive ■defense.
Does the fact, that the sale was, subsequently to the destruction ■of the insured property, set aside by the order of the court under whose decree it was made, alter the case? We think not. But two reasons are stated in the order for setting aside the sale; first, that the purchase money had not been paid; and second, that all parties consented thereto. The first reason could have no application to the sale of the personal property; for, there being no occasion for the payment of the purchase money as to it, its non-payment could afford no reason for setting it aside; The consent of all parties may have been a good reason to justify the action of the court in setting aside the sale as to those parties j but we can not rid ourselves of the impression that such action of the court, based upon and obedient to the will of parties, ought not to be permitted to affect the rights, previously fixed, of persons who were notparties, and *294 whose interests were not consulted in the matter. It ought not to be in the power of the plaintiff, or of parties similarly situated, to-escape the burden of assessments in case the insured property remains unscathed, and to insist on compensation, in case of its destruction, at their mere will and pleasure.
It may be, and, indeed, it would seem—though the question is-not before us, and we therefore do not now undertake to decide it —that had this insured property not been destroyed during the interval between the time of the sale and of the order of setting' it aside, the obligations of the policy would, on the setting aside of the sale, have revived; and that the defendant would have-been liable for any loss occurring subsequently to that time, and. during the period .*covered by the terms of the policy. 1 Phil. on Insurance, secs. 107, 180; Lane v. Maine M. F. Ins. Co., 3 Maine, 46; Dadmun Man. Co. v. Worcester Mut. F. Ins. Co., 11 Met. 429: Power v. Ocean Ins. Co., 19 La. 28.
Be this as it may, we ax*e of opinioix that the plaintiff is not entitled to recover for any loss occurring between the time of the sale- and the time of setting it aside. As to that intex’val, we think the-rights of the plaintiff under the policy were, at least, suspended.
The consent of the plaintiff to the ox’der setting aside the sale, may have been ill-advised and unfortunate to some of its stockholdex'S; but with that question we have, in this case, nothing to do..

Judgment for defendant.

Scott, Sutliee, Peck, and Gholson, JJ., concurred.